# ORIGINAL



Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

MAR 2̅6̅ 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

MAR 29 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PAUL BLACK,

                Plaintiff,

      v.

DEL WEBB COMMUNITIES, INC., *et al.*,

                Defendants.

NO. CV 05-8743 SJO (JWJx)

**ORDER GRANTING DEFENDANT LAND AMERICA FINANCIAL GROUP'S MOTION FOR ATTORNEYS' FEES**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

    This action was brought by Plaintiff Paul Black ("Black") against several Defendants, including Defendant Land America Financial Group, Inc. ("LAFG") regarding a Nevada real estate deal gone bad. Most Defendants, but for LAFG, were subject to an arbitration agreement, and were dismissed from the case early on. The remaining Defendant, LAFG, litigated this case on the merits and was victorious at summary judgment.

    LAFG has now moved for attorney fees and costs defending this action. Costs were awarded pursuant to the Final Judgment entered December 11, 2006, and the amount of costs were taxed at $4,800 by the Court Clerk on January 18, 2007. The Court has considered the briefing for LAFG's Motion for Attorneys' Fees and finds the Motion suitable for decision without oral argument. L.R. 7-15. Upon consideration of the briefs, the Court GRANTS LAFG's Motion for Attorneys' Fees, in the amount of $110,502.

104

I.    **LEGAL STANDARD**

There are several possible bases for awarding attorney fees. The standards vary slightly on whether attorney fees are mandatory or discretionary, and whether it is the party or the party's counsel which is responsible for paying the fees.

Rule 37(c) of the Federal Rules of Civil Procedure allow for the recovery of attorney fees in two situations. First, if a party has failed to disclose information under Fed. R. Civ. P. 26, that *party may* be required to reimburse the opposing party for legal fees, and be subject to other sanctions. Alternatively, if a party has failed to admit the truth of a matter requested under Fed. R. Civ. P. 36, that *party shall* be required to reimburse the opposing party for legal fees and other expenses. There are four exceptions: if the request was objectionable under Fed. R. Civ. P. 36(a), if the admission sought was unimportant, if the party failing to admit had reasonable grounds for believing it might prevail on proving the issue, or some other good reason for failing to admit.

An *attorney* may be liable for the opposing party's legal fees under 28 U.S.C. § 1927 if the attorney "multiplies the proceedings in any case unreasonably and vexatiously." Such an award of legal fees is subject to a finding that the attorney acted in "bad faith." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1118 (9th Cir. 2000). "Bad faith," here means that the attorney knowingly or recklessly pursued a frivolous claim, or engaged in litigation tactics that needlessly obstructed the litigation of non-frivolous claims. *In re Keegan Mgmt. Co. Sec. Lit.,* 78 F.3d 431, 436 (9th Cir. 1996). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *Id.*

The Court may also require the payment of attorney fees through its equitable power. In *Chambers v. NASCO,* 501 U.S. 32, 45-46 (1991), the Supreme Court explained three situations where this occurs. One of these is where a court finds that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* A court can impose attorney fees against the responsible *party* through its inherent equitable power. *Id.*

1    The local rules also provide for awarding attorney fees.  Local Rule 11-9 provides that

2    frivolous motions are subject to sanctions under Local Rule 83-7, which in turn provides that with

3    a finding of bad faith, attorney fees may be awarded.  Local Rule 37-4 provides that a lack of

4    cooperation by counsel during discovery may be sanctioned.

5    II.    FINDINGS

6    A.    Frivolous and Recklessly Filed Suit

7    The Court finds that Black's lawsuit against LAFG was recklessly brought and frivolous.

8    Although Black had at all times been in possession of the documents governing the real estate

9    transaction, and a reading of these documents would show that no claim would stand against

10   LAFG, the lawsuit was nevertheless brought.  Fundamentally, it appears that the suit was filed in

11   the absence of any substantive investigation of the claim against LAFG.

12   First, LAFG was named on the Complaint, yet it was not LAFG, but Lawyers Title of

13   Nevada, Inc. ("LTN"), a subsidiary of a subsidiary of a subsidiary of LAFG, which was a party to

14   the real estate transaction underlying this litigation. (Mot. at 5.) This suggests that the lawsuit was

15   filed without even reading the documents underlying the transaction.

16   Second, Black appeared to be unaware that the dispute with the other four Defendants (Del

17   Webb, Realty Mortgage, Pulte Mortgage, and Pulte Homes) was to be resolved by arbitration,

18   according to the documents governing the real estate transaction. (Order of May 2, 2006.) This

19   unawareness further suggests that the lawsuit was filed by Black without even reading the

20   documents underlying the transaction. On April 5, 2006, these Defendants moved to dismiss the

21   lawsuit, asserting that the lawsuit was to be resolved by arbitration. Black fought the motion to

22   dismiss, in an opposition filed April 28, 2006. The motion was granted on May 2, 2006. Rather

23   than conceding that the dispute with these four Defendants was to be governed by arbitration,

24   Black then moved for relief of the motion to dismiss on May 30, 2006.  The motion was denied

25   on August 11, 2006.

26   Third, Black has continued to gloss over the fatal flaw in its claim against LAFG. This Court

27   has explained, as clearly as it can, that Black's own conduct caused the delay in the closings of

28   one or more properties. (Order of Dec. 6, 2006, at 14.) It was undisputed that by the terms of the

1   rebate agreement, *all* of the properties must have closed by various deadlines.  *Id.* at 6.  These

2   terms were not contested.  Three of the properties closed late due to Black's own delay in

3   acquiring insurance or funding loans.  *Id.* at 7-8.  Therefore, Black's own delay meant that the

4   rebate was forfeited regardless of any delay by LAFG or LTN.  *Id.* at 14.  Therefore, LAFG is not

5   liable to Black for the $300,000 rebate.

6          These facts were readily ascertainable by Black, and moreover, were surely known by

7   Black at the time of the transaction in 2004.  It was not necessary for Black to mine warehouses

8   of documents in order to find the relevant dates.  Back in 2004, in order to ensure that the closings

9   occurred on time, Black must have been aware of the closing dates.  Black must have also been

10  aware of the dates that the insurance coverage took effect and the mortgages funded, in order

11  to attempt to ensure that the closing deadlines were met.  If Black did not actually know the dates,

12  Black ought to have known them.  Therefore, Black must have been aware in 2004 that the rebate

13  was disqualified because the insurance coverage and the loan funding occurred too late.  This

14  is a black and white issue.  There are no legal arguments which could be made, and none have

15  been offered, to shade the standards.  Thus, Black ought to have known from 2004, and therefore

16  at the time of filing the suit that LAFG did not cause him to lose the $300,000 rebate.

17         Lastly, the case against LAFG was fatally flawed in several respects.  In addition to the

18  problem that the alleged misconduct was not done by LAFG and in addition to the causation

19  problem, there are the twin problems that LAFG and LTN did not break the covenant of good faith

20  and fair dealing of the escrow agreement and did not break the covenant of good faith and fair

21  dealing of the Concession Agreement; the problem that the loss of the $300,000 rebate was not

22  foreseeable damages; the problem that Black has no proof of any delay by LAFG and LTN, only

23  speculation and innuendo; as well as possible other problems which the Court found unnecessary

24  to analyze in its Order of December 6, 2006.  Any one of these problems, by itself, was capable

25  of scuttling Black's case against LAFG, and thus the case was devoid of merit.

26         It should be reiterated that this suit was brought by Black to receive a $300,000 rebate

27  outlined in the Concession Agreement.  Black admitted that LTN and LAFG were not parties to

28  the Concession Agreement and were not even aware of the Concession Agreement until some

1   of the closing deadlines had passed. (Order of Dec. 6, 2004, at 6.) Black ought to have

2   considered very carefully whether LAFG was a proper party to sue under this agreement. Thus,

3   the case was recklessly filed.

4         Altogether, these factors show that the suit was frivolous and was recklessly filed.

5         B.   Discovery Abuse

6         Black's conduct in the litigation appears calculated to extract a settlement from LAFG,

7   which ended up spending in excess of a hundred thousand dollars in attorney fees.

8         First, Black's conduct in discovery was shameful. Shortly after filing its Answer to the First

9   Amended Complaint ("FAC") on April 4, 2006, LAFG propounded special interrogatories and

10  requests for production to Black. Black's allegations were fact dependent, relating to the

11  scheduled closing dates and closing dates of nine different properties. (Order of Dec. 6, 2006,

12  at 7.) Additionally, LTN was not a party to key transactions in the real estate deals. For example,

13  LTN was not a signatory to the Concession Agreement, and the Concession Agreement was

14  never given to LTN as an escrow instruction. *Id.* at 6. Therefore, in order to prepare a defense,

15  LAFG needed to obtain the documents relating to the transaction from Black. (Mot. at 17.)

16        Although these documents were very few in number and should have been produced

17  immediately, Black requested and received numerous extensions to respond to the discovery

18  requests. *Id.* Months later, in August 2006, Black responded to the requests. *Id.* These requests

19  were inadequate. LAFG moved to compel, and on October 5, 2006, Magistrate Judge

20  Jeffrey W. Johnson granted the motion and sanctioned Black. Yet, according to LAFG, the

21  documents produced subsequent to this order were also inadequate.

22        Extracting Black's deposition was a grueling process for LAFG. When LAFG requested

23  the deposition of Black, allegedly Black did not respond. *Id.* at 18. LAFG then noticed the

24  deposition for October 18, 2006, to which Black responded that he would be out of town. *Id.* At

25  LAFG's acquiescence, Black scheduled the deposition for October 23, 2006, the discovery cut-off

26  date. *Id.* Black then failed to show up to the deposition and then, incredibly, taunted LAFG,

27  saying that because the discovery period had ended, there was nothing LAFG could do to secure

28  Black's deposition. *Id.* LAFG then moved for sanctions. *Id.* With the patience of a saint,

1  Magistrate Judge Johnson denied the motions for sanctions, but cautioned Black and ordered

2  Black to submit to a deposition, in an order dated November 21, 2006.

3        On September 28, 2006, LAFG propounded requests for admission to Black. (Mot. at 17.)

4  These requests went to the causation issue, asking for each of the properties whether all

5  documents appurtenant to the mortgage were signed and in the hands of LTN. *Id.* at 11. Black

6  denied all of these requests for admission. *Id.* As stated above, the causation issue was black

7  and white, and the denials were improper. In addition, Black denied other requests for admission

8  without any basis for denial, as it subsequently admitted those same facts. *Id.* at 11-12.

9        Second, Black failed to conduct any discovery of its own. LAFG has represented that Black

10  failed to conduct any discovery of LAFG. (Reply at 2 n.3.) Black also did not appear at

11  depositions of witnesses from Defendant Del Webb and Defendant Pulte Mortgage. (Mot. at 7.)

12  Not conducting discovery suggests that Black was uninterested in reaching the merits of the case,

13  and hoped to settle irrespective of the merits. While it may be true that discovery was

14  unnecessary for Black, assuming that all of the significant documents were in Black's possession

15  from the outset of the case, such a situation would only emphasize that Black failed to conduct

16  an investigation into the merits of the claim against LAFG, and emphasize that the case was

17  recklessly filed.

18       C.   <u>Other Indicia of Frivolous, Recklessly Filed Litigation</u>

19        On top of the discovery issues, there are other factors indicating that Black intended to use

20  this litigation to extract a settlement from LAFG irrespective of the merits.

21        First, there is the quality of the briefs. The briefs were very short, lacked discussions of key

22  legal issues, and were generally substandard. Reading the briefs gave the Court the impression

23  that the briefs were intended not to resolve litigation disputes, but to prolong litigation and drive

24  up the Defendants' litigation costs. Black's briefs were, to put it charitably, economically written.

25  The result is that the Defendants, including LAFG, had to spend substantially more time

26  responding to the briefs than Black spent writing the briefs. Additionally, Black filed three motions

27  which at least bordered on being frivolous: the motion filed May 30, 2006 seeking to set aside the

28  Order enforcing arbitration, despite the presence of a signed arbitration agreement; the motion

filed September 20, 2006 seeking to dismiss its own case and enforce arbitration against LAFG, despite the fact that LAFG is not a party to the arbitration agreement; and the motion filed January 24, 2007 to reconsider the summary judgment motion, which did not purport to overcome all of the independent bases this Court found for granting judgment in favor of LAFG or comply with Local Rule 7-18. It could be inferred that Black intended to drive up the Defendants' litigation costs, so that settling on terms favorable to Black would become more attractive than litigating.

Second, Black has commented in its briefs that while it may not have a meritorious suit, it would still like to "present all the evidence to the jury." (Mot. filed Jan. 24, 2007, at 9.) The implication is that Black was hoping for a favorable jury verdict even if unsupported by the merits. For example, in Black's Motion for Reconsideration, Black expresses a hope that it might secure damages in a jury trial, even if the $300,000 rebate is unrecoverable as unforeseeable damages. *Id.* Black does not posit an alternate theory of liability under which it could recover any money. Black simply asserts that it is entitled to at least $98,000 by LAFG's concession. (Yet this assertion is a gross misreading, perhaps intentional, of LAFG's Motion for Summary Judgment. In it, LAFG argued that Black's recovery of the rebate should be limited to at most $98,000 because Black secured a windfall of $202,000 in price reductions by failing to close the homes on time, which largely offset Black's loss of the $300,000 rebate. (Mot. filed Nov. 3, 2006, at 19.))

Previously, Black ignored most of LAFG's summary judgment arguments, calling them irrelevant (in fact, they were quite relevant, and fatal to Black's case), and asked to go before a jury to present its case. (Opp'n filed Nov. 15, 2006, at 3-4, 9.)

Third, Black has made numerous references to its willingness to settle the case and engage in mediation. (Reply at 2 n.3.) Additionally, Black attempted to bring LAFG into arbitration by moving to dismiss its own case, despite the fact that LAFG was not a party to the arbitration agreement. A desire to settle a case outside of court is by no means a bad thing in and of itself, and is often an admirable way to promote judicial efficiency. However, Black expressed an intent to not litigating the case on the merits, especially in its discovery abuses, its failure to take discovery, and its inadequate briefing. When coupled with Black's clear intention of not litigating

1    the case on the merits, Black's desire to resolve the case by settlement shows that Black was

2    interested in harassing LAFG into a settlement favorable to Black.

3          Fourth, Black has continued to act in bad faith after summary judgment was entered in

4    LAFG's favor. Black served its Motion to Reconsider, then attempted to file the motion twice, on

5    January 11, 2007, and on January 19, 2007. Both of these filing attempts were improper and

6    were rejected. However, Black failed to notify LAFG that the motion was rejected, as required by

7    the notice of discrepancy. Therefore, LAFG spent almost four thousand dollars preparing an

8    opposition and filing it on January 22, 2007. (Reply at 6.) The motion itself was finally filed

9    properly on January 24, 2007. Although the motion was summarily denied for failing to comply

10   with Local Rule 7-18 and for other reasons, LAFG had already prepared and filed its opposition.

11   III.    AWARD OF ATTORNEY FEES

12         The Court finds that this frivolous lawsuit was recklessly brought, constituting a finding of

13   "bad faith" litigation under 28 U.S.C. § 1927 and *Chambers v. NASCO*. Under this finding, the full

14   amount of attorney fees sought by LAFG, $110,502, is to be paid by Black. The bad faith

15   continued after the suit was filed, in an apparent attempt to browbeat LAFG into a settlement

16   favorable to Black. Even if not all of Black's litigation tactics are sanctionable when considered

17   individually, the Court's finding of bad faith is based on "the cumulative effect of [Black's] conduct."

18   *Salstrom v. Citycorp Credit Servs., Inc.,* 74 F.3d 183, 185 (9th Cir. 1996).

19         The amount of the fees incurred by LAFG from the receipt of Black's responses to LAFG's

20   requests for admission is also supported by Rule 37(c). These fees were incurred in response

21   to Black's failure to admit the truth of a matter requested under Fed. R. Civ. P. 36, without good

22   cause for failure to admit. If LAFG had obtained the necessary admissions, the case could have

23   been disposed of with a simple motion requiring little time to draft. Under Rule 37(c), Black is

24   liable for this portion of LAFG's attorney fees also.

25         In *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933 (9th Cir. 1994), the Ninth Circuit affirmed

26   a district court's awarding of over two hundred thousand dollars against doctors in a malpractice

27   action. *Id.* at 939. In this action, the doctors had denied three requests for admission, including

28   conformance to the standard of care and causation. *Id.* at 937-39. The district court later found

1   that there was no basis for denying the requests for admission. *Id.* These requests for admission

2   went to the core of the case. However, the court held that merely because a party might lose its

3   case by admitting the facts requested does not excuse the party from the obligation to have a

4   good faith basis in denying a request for admission. The Ninth Circuit affirmed. "Parties may not

5   view requests for admission as a mere procedural exercise requiring minimally acceptable

6   conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and

7   word play." *Id.* at 936.

8          The hourly rates charged by LAFG's legal counsel are unusually low given the quality of

9   the work, at $170 per hour for senior associate time and $185 per hour for partner time. (Reply

10   at 6.) The Court therefore will not shave LAFG's attorney fees, awarding the full amount to LAFG.

11   Additionally, a full award of attorney fees is warranted by the Court's finding that the case against

12   LAFG was frivolous and recklessly brought from the time the Complaint was filed.

13   IV.   <u>CONCLUSION</u>

14          Black is liable for $110,502 in attorney fees, payable to LAFG.

15          IT IS SO ORDERED.

16

17   Dated this _27_ day of March, 2007.

18

19

20                                          S. JAMES OTERO
                                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28